UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LESLIE J. JONES,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-1232
(FJS/VEB)

## I. INTRODUCTION

In November of 2006, Plaintiff Leslie J. Jones filed an application for widow's insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since January of 1992. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, McMahon Kublick & Smith, P.C., Jennifer Gale Smith, Esq., of counsel, commenced this action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 9).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for widow's insurance benefits on November 15, 2006, alleging disability beginning on January 1, 1992. (T at 40).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ F. Patrick Flanagan on January 6, 2009, in Syracuse, New York. (T at 6). Plaintiff appeared with her attorney and testified. (T at 10-33).

On July 24, 2009, ALJ Flanagan issued a written decision finding that Plaintiff was not disabled and denying her application for benefits. (T at 40-44). The ALJ's decision became the Commissioner's final decision on September 10, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, through counsel, timely commenced this action on November 4, 2009. (Docket No. 1). The Commissioner interposed an Answer on December 30, 2009. (Docket No. 5). Plaintiff filed a supporting Brief on February 11, 2010. (Docket No. 7). The Commissioner filed a Brief in opposition on February 22, 2010. (Docket No. 8).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 6).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

To receive benefits, a widow must become disabled before the expiration of a "prescribed period." (T at 42). The ALJ concluded that the prescribed period in this case began in 1994 (when Plaintiff last received mother's[4] benefits on account of her deceased husband) and ended seven (7) years later, *i.e.* on December 31, 2001. (T at 42). Accordingly, to be entitled to widow's benefits Plaintiff needed to establish that she became disabled on or before December 31, 2001. (T at 42). Plaintiff does not challenge this aspect of the ALJ's decision.

The ALJ noted that Plaintiff was the widow of a deceased insured worker and she had attained the age of fifty (50), without having remarried. The ALJ also concluded that Plaintiff met the non-disability requirements for disabled widow's benefits set forth in § 202 (e) of the Social Security Act. (T at 42).

The ALJ determined that Plaintiff had not engaged in substantial gainful activity

---

[4]"Mother's" benefits refers to the benefits Plaintiff received as a result of being the mother of a child of a deceased parent.

since January 1, 1992, the alleged onset date. However, the ALJ concluded that Plaintiff had not established the existence of a medically determinable impairment existing on or before December 31, 2001. (T at 42).

Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, during the relevant time period and was therefore not entitled to benefits. (T at 43). As noted above, the ALJ's decision became the Commissioner's final decision on September 10, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff asserts the ALJ should have given greater weight to the assessment of Ann Cross, a licensed clinical social worker. Second, Plaintiff contends that the ALJ erred by finding that Plaintiff could perform the basic mental demands of competitive remunerative unskilled work. Third, Plaintiff argues that the ALJ should have consulted a vocational expert. This Court will address each argument in turn.

#### a. Social Worker's Assessment

Ann Cross, a licensed clinical social worker, completed two form Medical Assessments of Ability to do Work-Related Activities (Mental). In a form completed on January 21, 2009, Ms. Cross indicated that she last treated Plaintiff in "approx. 1996." (T at 313). She opined that, during the period prior to December 31, 2001, Plaintiff had a poor ability to follow work rules, use judgment, and deal with work stress. (T at 311).

Ms. Cross also indicated that Plaintiff had a fair ability to relate to co-workers, deal with the public, function independently, and maintain attention and concentration. (T at 311). Ms. Cross rated Plaintiff's ability to understand, remember, and carry out complex and detailed job instructions as "poor" and Plaintiff's capacity to understand, remember and carry out simple job instructions as "fair." (T at 312). Ms. Cross indicated that Plaintiff's ability to behave in an emotionally stable manner was "poor" and her capacity to relate predictably in social situations and demonstrate reliability were rated as "fair." (T at 312). When asked to provide medical/clinical findings to support her assessment, Ms. Cross stated "pt. depressed." (T at 312).

Ms. Cross completed another form on February 4, 2009, in which she opined that, prior to December 31, 2001, Plaintiff had a "marked" limitation with regard to her ability to understand, remember, and carry out short instructions; understand and remember detailed instructions; and make judgments on simple work-related decisions. (T at 309). Ms. Cross also indicated that Plaintiff had a marked limitation in terms of interacting appropriately with the public and supervisors, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting. (T at 310). Ms. Cross stated that Plaintiff's limitations were the result of frequent mood swings, depression, and frequent family issues that interfere with "performance and stability." (T at 310).

Plaintiff argues that the ALJ improperly discounted Ms. Cross's findings and that Ms. Cross's assessment was sufficient to establish a medically determinable impairment during the relevant time period (i.e. prior to December 31, 2001). This Court finds Plaintiff's argument unpersuasive.

A social worker's assessment is not considered a "medical opinion" as defined under

7

the Social Security Regulations. See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995); Corson v. Astrue, 601 F. Supp.2d 515, 531-32 (W.D.N.Y. 2009). The Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313(citing 20 C.F.R. § 404.1527(a)(2)). Section 404.1513(a) of the Regulations lists five categories of "acceptable medical sources," none of which mentions social workers. Rather, social welfare personnel are listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

Accordingly, because the Regulations do not classify social workers as either physicians or "other acceptable medical sources," the ALJ was not bound to give Ms. Cross's opinion controlling weight. See Velasquez v. Barnhart, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the regulations be read to require the ALJ to give controlling weight' to such sources.").

This Court is mindful that although social workers are not considered "acceptable medical sources," their opinions are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight

should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").

Nevertheless, the Second Circuit has held that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). In this case, the record evidence amply supported the ALJ's decision to discount Ms. Cross's opinion.

According to Ms. Cross, she last treated Plaintiff in sometime in 1996, thirteen (13) years prior to the date she rendered her opinion in the context of this case. (T at 313). Plaintiff indicated that she last treated with Ms. Cross in 1994. (T at 95). Ms. Cross provided no indication as to how she was able to remember Plaintiff and/or evaluate the nature and extent of Plaintiff's impairments after such an extended period of time. Ms. Cross's assessments were unsupported by any contemporaneous treatment notes, clinical findings, or other records. Plaintiff's counsel indicated that the records had been destroyed and were, thus, unavailable. (T at 14, 32). As such, Ms. Cross's opinion was based purely only her mental recollections from treatment that occurred more than a decade earlier. Under such circumstances, the ALJ was well within his discretion to find the social worker's opinion not particularly reliable.

Moreover, Ms. Cross's two reports are inconsistent, suggesting that Ms. Cross's

9

recall was (quite understandably) not entirely accurate after more than a decade. For example, in the January 2009 assessment, Ms. Cross indicated that Plaintiff had a "fair" ability to understand, remember, and carry out simple job instructions as of December 31, 2001. (T at 312). The term "fair" was defined on the assessment form as indicating that the claimant's ability to function was "limited but satisfactory." (T at 311). In the February 2009 assessment, Ms. Cross opined that Plaintiff had a "marked" limitation with respect to her ability to understand, remember, and carry out short, simple instructions. (T at 309). The term "marked" was defined on the assessment form as indicating that the ability to function was "severely limited but not precluded." (T at 309). A similar inconsistency also exists with regard to Ms. Cross's assessment of Plaintiff's limitations in relating to the public. (T at 310 "marked", 311 "fair").

The ALJ also made adequate efforts to develop the record concerning the relevant time period.[5] The record was left open following the hearing to allow for the gathering and submission of additional evidence. (T at 43). The ALJ and Plaintiff's counsel both tried unsuccessfully to seek out additional evidence with respect to the time period in question. (T at 32-33, 207-208, 315-16, 318).

Lastly, Plaintiff suggests that Ms. Cross's assessment should have been afforded greater weight because it was consistent with the findings of Dr. DiPietro, Dr. Kimura, and Dr. Leso. However, none of these providers treated Plaintiff during the relevant time period or opined as to whether she had any medically determinable impairment or limitations

---

[5]It is well-settled in this Circuit that in light of the "essentially non-adversarial nature of a benefits proceeding," ALJs have an affirmative duty to develop the record. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

during that period.

Dr. DiPietro, a psychologist, treated Plaintiff for depression in August of 2005 and indicated that, as of February 2006, Plaintiff had met her therapeutic goals and was no longer receiving treatment. (T at 205-206). Dr. Kimura treated Plaintiff between June of 2005 and May of 2007. Dr. Kimura diagnosed bipolar disorder and assessed significant limitations. (T at 228-230). However, Dr. Kimura indicated that Plaintiff felt "full of energy" during the decade prior to receiving treatment and described herself as a "workoholic." (T at 230). Plaintiff was evaluated at St. Joseph's Hospital by Dr. Leso in July of 2004 due to psychiatric symptoms, but those symptoms were related to a recent break-up with a boyfriend. (T at 285).

In light of the foregoing, this Court finds that substantial evidence supports the ALJ's decision to discount Ms. Cross's assessment. The ALJ acted within his discretion in this regard and his finding of insufficient evidence establishing a medically determinable impairment during the relevant time period is adequately supported by the evidence.

### b. Assessment of Plaintiff's Abilities

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

The ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment on or before December

31, 2001. (T at 42).

Plaintiff contends that the ALJ erred and should have concluded that she had a substantial loss of ability to meet the basic mental demands of competitive, remunerative, unskilled work.  In support of this argument, Plaintiff relies upon the opinions provided by her social worker, Ms. Cross.  However, as outlined above, the ALJ acted within his discretion in discounting Ms. Cross's assessment (i.e. the social worker is not an "acceptable medical source;" her opinions were not supported by any contemporaneous notes, records, or findings; and her assessment, which contained inconsistencies, appears to have been based purely upon her recollection of treatment that occurred more than a decade prior).  Accordingly, this Court finds no error with regard to this aspect of the ALJ's decision.

### c.     Consultation with a Vocational Expert

At step 5 in the sequential evaluation, an ALJ is required to perform a two part process to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the claimant could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the

Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, Plaintiff argues that her work capacity was significantly diminished by non-exertional impairments and, as such, the ALJ was obliged to consult a vocational expert. However, the ALJ's sequential evaluation ended at step two, with the (adequately supported) conclusion that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment on or before December 31, 2001. (T at 42). Accordingly, the ALJ was not required to continue the sequential evaluation process, consult the Grids, or obtain testimony from a vocational expert. This Court finds no error with respect to this aspect of the ALJ's decision.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: April 17, 2012
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 17, 2012

_____
Victor E. Bianchini
United States Magistrate Judge